# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>COMMERCIAL RECOVERY SYSTEMS, INC., and<br><br>TIMOTHY L. FORD, individually and as an officer of COMMERCIAL RECOVERY SYSTEMS, INC., and<br><br>DAVID J. DEVANY, individually and as a former officer of COMMERCIAL RECOVERY SYSTEMS, INC.<br><br>Defendants. | Case No. 4:15-CV-36<br>JUDGE MAZZANT |

**PLAINTIFF'S FIRST SET OF DISCOVERY REQUESTS TO
INDIVIDUAL DEFENDANT TIMOTHY L. FORD**

Under Rules 26, 33, 34 and 36 of the Federal Rules of Civil Procedure, Plaintiff, the

United States of America, requests that Defendant, Commercial Recovery Systems, Inc.

("CRS"), respond to the following Requests for Production of Documents, Interrogatories, and

Requests for Admission:

**I.    DEFINITIONS**

1.      ***"Agents," "representatives,"*** and ***"employees"*** mean any person who is or was

paid a salary or a commission, or provided anything of value, or was an independent contractor

for, or received any monetary or other benefit in exchange for, goods or services provided.

1

2.    *"Complete consumer file"* means all documents contained in a file relating to a debt to be collected, including, but not limited to, all materials forwarded by a client-creditor or entity from which a debt was purchased; the name, address and telephone number of the consumer contacted; and a record of all collection activities engaged in with respect to the debt, including all correspondence of any kind (including letters, e-mail, facsimiles, etc.), all notes and comments, and all entries into any log, file, or database that Defendants or their debt collectors use to record collection activities.

3.    *"Consumer"* means any person from whom Defendants attempted to collect a debt.

4.    *"Corporate Defendant"* means Commercial Recovery Systems, Inc. ("CRS"), individually, jointly, or in any combination, and any affiliates, partnerships, and joint ventures, predecessors, divisions, subsidiaries, and all members, directors, officers, employees, agents, and representatives of these parties.  The terms "affiliate" and "joint venture" refer to any person in which there is partial (10 percent or more) or total ownership or control between Defendants and any other person.

5.    *"Debt"* means any obligation or alleged obligation of a consumer to pay money.

6.    *"Debt collector"* means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

7.    *"Defendants"* means Commercial Recovery Systems, Inc. ("CRS"), Timothy L. Ford, and David J. Devany, individually, jointly, or in any combination, and any affiliates,

2

partnerships, and joint ventures, predecessors, divisions, subsidiaries, and all members, directors,

officers, employees, agents, and representatives of these parties.  The terms "affiliate" and "joint

venture" refer to any person in which there is partial (10 percent or more) or total ownership or

control between Defendants and any other person.

       8.     *"Document"* has the full extent of its meaning as provided in Rules 26 and 34 of

the Federal Rules of Civil Procedure including, without limitation, the complete original and any

non-identical copy (whether different from the original because of notations on the copy or

otherwise), regardless of origin or location, of any written, typed, printed, transcribed, taped,

recorded, filmed, punched, computer-stored, or graphic matter of every type and description,

however and by whomever prepared, produced, disseminated, or made, including, but not limited

to, any advertisement, book, pamphlet, periodical, contract, correspondence, file, invoice,

memorandum, note, telegram, report, record, handwritten note, working paper, routing slip,

chart, graph, paper, index, map, tabulation, manual, guide, outline, script, abstract, history,

calendar, diary, agenda, minute, code book, opened electronic mail, and computer material

(including print-outs, cards, magnetic or electronic tapes, discs and any codes or instructions as

will transform the computer materials into easily understandable form).

       9.     *"Documents sufficient to show"* means a group of documents which, when

viewed together, reveals the information sought.  The fact that no single document contains the

information sought does not relieve you of the responsibility to gather and return the additional

documents which, when viewed together, do contain the information requested.  The phrase

encompasses those documents that are both necessary and sufficient to provide the information

requested.  Where "documents sufficient to show" is specified, if summaries, compilations, lists

or synopses are available that provide the information, these should be provided in lieu of the underlying documents.

10.      *"FDCPA"* means the Fair Debt Collection Practices Act, 15 U.S.C. §§1601, 1692 *et seq.*

11.      *"Identify"* or *"the identity of"* when referring:

a.      to a natural person, means identification by name, title, present business affiliation, present business and home addresses and telephone numbers, and, if applicable, the dates of employment, position or title, aliases used in speaking with consumers, salary, and, if no longer employed by any Defendant, the reason for leaving, or if a present business affiliation or present business and home addresses or telephone numbers are not known, the last known business and home addresses and telephone numbers;

b.      to corporations, limited partnerships, or limited liability companies, means identification by state of incorporation or place of registration, name, address, and telephone number for all offices or business places wherever located, their domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, partners, agents, and representatives;

c.      to other businesses or other organizations, means identification by last known name, address, telephone number, and contact person, where applicable;

d.      to a statement, means identification by who made it, who took or recorded it, and all others, if any, present during the making thereof, and a statement as to when, where, and how it was taken or recorded, and who has present or last known possession, custody, or control thereof;

4

e.    to a document, means identification by a reasonably detailed description thereof, including, if applicable, when, where, and how it was made; to identify who made it; and to identify who was present when it was made and who had last known, possession, custody, or control thereof; and

f.    to any other tangible thing, means identification by giving a reasonably detailed description thereof, including, if applicable, when, where, and how it was made; to identify who made it; and to identify who was present when it was made and who had last known possession, custody, or control thereof.

12.    *"Person"* includes Defendants and means any natural person, corporate entity, partnership, association, joint venture, government entity, trust, proprietorship, organization, group of natural persons, or other association separately identifiable, whether or not the association has a separate legal existence in its own right.

13.    *"Relating to"* means  discussing, describing, reflecting, containing, analyzing, studying, reporting, commenting, evidencing, constituting, setting forth, considering, recommending, concerning, or pertaining to, in whole or in part.

14.    *"You"* and *"your"* means the person or entity to whom this discovery request is issued.

## II.    INSTRUCTIONS

1.    Each document request requires production of documents or information within the files of Defendants; within the possession, custody, or control of agents, employees, or persons (including, but not limited to, debt collectors, independent contractors, attorneys, accountants, and advisors) subject to the direction or control of Defendants; or within the

5

possession, custody, or control of other persons acting or purporting to act on behalf of Defendants.

2.      Unless otherwise stated in a specific Request for Production, Interrogatory or Request for Admission, the **relevant time period** for each Request for Production, Interrogatory or Request for Admission shall be from **January 1, 2010**, until the date of full and complete compliance with these requests.  If the response to any request is different for different periods within the applicable time period, provide a complete response for each time period and designate the specific time period for which the response is applicable.

3.      Legible copies of original documents may be submitted in lieu of originals only if they are true, correct, and complete copies of the original document; provided, however, that submission of a copy shall constitute a waiver of any claim as to the authenticity of the copy should it be necessary to introduce the copy into evidence in any court of law; and provided, further, that you shall retain the original documents and produce them to Plaintiff upon request.

4.      Defendants shall submit each document in its entirety even if only a portion of the document relates to a request.  This means that the document shall not be edited, cut, or expunged and shall include all appendices, tables, or other attachments and all other documents referred to in the document or its attachments.

5.      This request seeks production of all documents described, including all drafts, of whatever date, and all non-identical copies.

6.      If any document responsive to a request is not in your possession, custody, or control, identify each person who has possession, custody, or control of the original or any copy of the document; if the document requested to be produced was, but no longer is, in your

6

possession, state the disposition of it and the reasons for the disposition; if the document requested to be produced has been destroyed, state the time the document was destroyed, the reason for its destruction, and the identity of the person who destroyed the document and the identity of any person who directed that the document be destroyed.

7.     If any document responsive to a request has already been produced pursuant to any previous order of the Court, identify the document, the type of document, where it was kept, and how it was produced.  If a portion of a document that has previously been produced is responsive to a request, identify the document, the type of document, the location of the document, and specify where in the document the requested information is contained.

8.     Each response, document, or thing produced shall be clearly and precisely identified as to the numbered interrogatory or request to which it is responsive.

9.     Each of the following interrogatories and requests for production are intended to be a continuing request for response or production.  Accordingly, should any additional information or responsive document come to your attention, possession, custody, or control after you have served responses to this First Set of Discovery Requests, up to and including the time of trial, the responsive document or information shall be promptly furnished to Plaintiff as required under Federal Rule of Civil Procedure 26(e)(1)(A).

10.     Claims of Privilege:  Unless altered by Court Order, the following instruction shall apply to claims of privilege.  Should a document responsive to any portion of this request be withheld from production under a claim of privilege, a privilege log shall be submitted setting forth the information required under Federal Rule of Civil Procedure 26(b)(5)(A).  Any privilege log submitted shall include:

7

a.      the date of the document;

b.      the nature of the information, including the format of the document;

c.      the identity of all authors and recipients of the document;

d.      if you are not the custodian of the document, the identity of the present custodian of the document;

e.      a summary of the contents of the document; and

f.      the privilege asserted or any other ground for withholding, and describe with particularity the claimed basis for withholding.

11.     "Electronically Stored Information" or "ESI" shall mean the complete original and any non-identical copy (whether different from the original because of notations, different metadata, or otherwise), regardless of origin or location, of any information created, manipulated, communicated, stored, or utilized in digital form, requiring the use of computer hardware or software.  This includes, but is not limited to, email, instant messaging, videoconferencing, and other electronic correspondence (whether active, archived, or in a deleted items folder), word processing files, spreadsheets, databases, and video and sound recordings, whether stored on:  cards; magnetic or electronic tapes; disks; computer hard drives, network shares or servers, or other drives; cloud-based platforms; cell phones, smart phones, PDAs, computer tablets, notebooks, or other mobile devices; or other storage media.  ESI also includes such technical assistance or instructions as will enable conversion of such ESI into a reasonably usable form.

(1)     Electronic Submission of Documents: The following guidelines refer to the production of any ESI or digitally imaged hard copy documents. Before submitting any

8

electronic production, the producing party must confirm with the receiving party that the proposed formats and media types will be acceptable. The parties will produce Concordance load-ready electronic productions, including DAT and OPT load files.

(2)   Electronically Stored Information: Documents created, utilized, or maintained in electronic format in the ordinary course of business must be produced as follows:

    a.   Spreadsheet and presentation programs, including but not limited to Microsoft Access, SQL, and other databases, as well as Microsoft Excel and PowerPoint files, must be produced in native format with extracted text and metadata. Data compilations in Excel spreadsheets, or in delimited text formats, must contain all underlying data un-redacted with all underlying formulas and algorithms intact. All database productions (including structured data document systems) must include a database schema that defines the tables, fields, relationships, views, indexes, packages, procedures, functions, queues, triggers, types, sequences, materialized views, synonyms, database links, directories, Java, XML schemas, and other elements, including the use of any report writers and custom user data interfaces;

    b.   All ESI other than those documents described in (1)(a) above must be provided in native electronic format with extracted text or Optical Character Recognition (OCR) and all related metadata, and with corresponding image renderings as converted to Group IV, 300 DPI, single-page Tagged Image File Format (TIFF) or as color JPEG images (where color is necessary to interpret the contents);

    c.   Each electronic file should be assigned a unique document identifier ("DocID") or

9

Bates reference.

d.   Production must include the following metadata fields in a standard ASCII
delimited Concordance DAT file:

(i)   **For electronic mail:** begin Bates or unique document identification
number ("DocID"), end Bates or DocID, mail folder path (location of
email in personal folders, subfolders, deleted or sent items), custodian,
from, to, cc, bcc, subject, date and time sent, date and time received, and
complete attachment identification, including the Bates or DocID of the
attachments (AttachIDs) delimited by a semicolon, MD5 or SHA Hash
value, and link to native file;

(ii)  **For email attachments:** begin Bates or DocID, end Bates or DocID,
parent email ID (Bates or DocID), page count, custodian, source
location/file path, file name, file extension, file size, author, date and time
created, date and time modified, date and time printed, MD5 or SHA Hash
value, and link to native file;

(iii)  **For loose electronic documents (as retrieved directly from network
file stores, hard drives, etc.):** begin Bates or DocID, end Bates or DocID,
page count, custodian, source media, file path, filename, file extension,
file size, author, date and time created, date and time modified, date and
time printed, MD5 or SHA Hash value, and link to native file;

(iv)  **For imaged hard copy documents:** begin Bates or DocID, end Bates or
DocID, page count, source, and custodian; and where applicable, file

folder name, binder name, attachment range, or other such references, as

necessary to understand the context of the document as maintained in the

ordinary course of business.

(3)   If the parties intend to utilize any de-duplication or email threading software or services

when collecting or reviewing information that is stored in computer systems or

electronic storage media, or if the computer systems contain or utilize such software,

the producing party must contact the receiving parties to determine whether and in what

manner the producing party may use such software or services when producing

materials.

(4)   Electronic productions must be submitted as follows:

    a.   With passwords or other document-level encryption removed or otherwise

        provided to the receiving parties;

    b.   As uncompressed electronic volumes on size-appropriate, Windows-compatible,

        media;

    c.   All electronic media shall be scanned for and free of viruses;

    d.   Data encryption tools may be employed to protect privileged or other personal or

        private information. The parties may use TrueCrypt, PGP, and SecureZip

        encrypted media. The passwords should be provided in advance of delivery, under

        separate cover. Alternate means of encryption should be discussed and approved

        by the receiving party.

    e.   The exterior of all packages containing electronic media sent through the U.S.

        Postal Service or other delivery services as follows:

11

**MAGNETIC MEDIA – DO NOT X-RAY**

**MAY BE OPENED FOR POSTAL INSPECTION.**

(5)   All electronic files and images must be accompanied by a production transmittal letter which includes:

   a.   A summary of the number of records and all underlying images, emails, and associated attachments, native files, and databases in the production; and

   b.   An index that identifies the corresponding consecutive document identification number(s) used to identify each person's documents and, if submitted in paper form, the box number containing such documents. If the index exists as a computer file(s), provide the index both as a printed hard copy and in machine-readable form.

## III.   REQUESTS FOR PRODUCTION OF DOCUMENTS

Under Rule 34 of the Federal Rules of Civil Procedure, Plaintiff requests Defendant to produce and permit copying of the documents or other materials identified below:

**Request No. 1:**  Articles of Incorporation, Partnership Agreement, Bylaws, Corporate Minutes, or other operational agreements, for the Corporate Defendant together with documents sufficient to show ownership interests in and control of the Corporate Defendant and any assumed names, fictitious names, and D/B/As used by it.

*Response:*

**Request No. 2**:  Documents sufficient to show the identity of all agents, representatives, and employees and the positions they held with the Corporate Defendant, including all non-identical organizational charts for the companies.

*Response:*

**Request No. 3**:  All documents relating to training, instructions, guidance, policies, practices, or directions provided to Defendants' agents, representatives, and employees in connection with debt collection, including each distinct version of all training manuals, policy manuals, memoranda, bulletins, directives, telephone scripts, model answers to questions or objections, and any other scripts for interactions with consumers.

*Response:*

**Request No. 4**:  All audio recordings of interactions between consumers and Defendants' agents, employees, or representatives in connection with the collection of a debt.

*Response:*

**Request No. 5**:  Documents sufficient to show that:

    (a)    Corporate Defendant is a law firm, or persons engaged as attorneys worked at Corporate Defendant's office(s);

    (b)    Defendants are detectives, officers of the court, affiliated with police or sheriff's departments, or worked in coordination with district attorney's offices or other criminal authorities;

(c)     consumers committed a crime by having an unpaid debt or by issuing a post-dated

non-sufficient funds check;

(d)     consumers were arrested or jailed as a result of failing to pay Defendants;

(e)     consumers had their property seized, or their wages garnished, as a result of failing

to pay Defendants;

(e)     consumers' driver licenses were suspended or "flagged" as a result of failing

to pay Defendants; and

(f)     Defendants took formal legal action, including seeking criminal prosecution,

obtaining warrants for arrest, or filing lawsuits against consumers for failing to

pay Defendants.

*Response:*

**Request No. 6:**  All complaints, petitions, lawsuits, or other court filings, both civil and criminal,

filed by or on behalf of Defendants, or filed at the behest of Defendants, in connection with a

consumer's purported debt.

*Response:*

**Request No. 7:**  All documents relating to Defendants' attempts to ensure, verify, or monitor

whether their employees were complying with Section 5 of the FTC Act, 15 U.S.C. § 45(a), and

the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1601, 1692 *et seq.*, including documents

showing any and all employee warnings, disciplinary actions, or terminations.

*Response:*

14

**Request No. 8:** All inquiries, complaints, cease and desist letters, lawsuits, administrative actions, or other actions by federal or state consumer protection agencies or private organizations like the Better Business Bureau concerning Defendants' debt collection practices, and Defendants' responses thereto. This Request excludes any communications with the Federal Trade Commission in connection with the present litigation and the preceding investigation.

   *Response:*


**Request No. 9:** For every consumer who complained about Defendants directly to Defendants or through a third party, the complete consumer file, including each complaint and Defendants' response to each complaint.

   *Response:*


**Request No. 10:** All documents relating to claims, demands, lawsuits, or administrative actions by individual consumers against any Defendant in connection with Defendants' debt collection activities.

   *Response:*


**Request No. 11:** Documents sufficient to show the identity of each client-creditor on whose behalf Corporate Defendants engaged in third-party debt collection.

   *Response:*

**Request No. 12:** All contracts and agreements between the Corporate Defendant and each client-creditor on whose behalf the Corporate Defendant engaged in third-party debt collection.

*Response:*

**Request No. 13:** Documents sufficient to show (a) the identity of each merchant account and payment processing service used by the Corporate Defendant in connection with the collection of debts and (b) the identity of all signatories to each merchant account or individuals authorized by the corporation to access each merchant account.

*Response:*

**Request No. 14:** Documents sufficient to show the identity of: (a) each bank and financial institution used by the Corporate Defendant; (b) the account names and numbers used; (c) the individuals authorized to withdraw funds from such accounts; and (d) the dates the accounts were opened and, if closed, the dates they were closed.

*Response:*

**Request No. 15:** Documents sufficient to show the relationship among and between the Corporate Defendant, Individual Defendant Timothy L. Ford, and Individual Defendant David J. Devany.

*Response:*

**Request No. 16:**  Documents constituting (or sufficient to show) your current ownership interests in the Corporate Defendant.

*Response:*

**Request No. 17:**  Documents constituting (or sufficient to show) all distributions, compensation, or consideration, including, but not limited to, dividends, shares of profits, salary, bonus, stipend, or living expenses, or other value you received or expect to receive from Corporate Defendants.

*Response:*

**Request No. 18:**  All state and federal tax filings, forms, or reports filed by you or on your behalf, including all schedules or attachments to the filings, forms, or reports, including, but not limited to, state unemployment taxes, sales taxes, and federal income tax returns.  If you do not have all responsive federal income tax returns for each year requested, complete and sign IRS Form 4506 and return to the Federal Trade Commission, 1999 Bryan Street, Suite 2150, Dallas, Texas 75201.

*Response:*

**Request No. 19:**  Documents constituting (or sufficient to show) your ownership interests in any other business in which you have an ownership interest, excluding publicly traded entities in which you have less than 5% ownership, if any.

*Response:*

**Request No. 20:**  Documents constituting financial statements of any other business in which you have an ownership interest, if any.

     *Response:*

**Request No. 21:**  All documents that support or were relied upon to support your answers to the Interrogatories and Requests for Admission below.

     *Response:*

## IV.    INTERROGATORIES

     Under Rule 33 of the Federal Rules of Civil Procedure, Plaintiff requests Defendant to answer the Interrogatories below:

**Interrogatory No. 1:**  Describe the relationship among and between the Corporate Defendant and Timothy L. Ford or any entities he owns, including:  (a) an explanation of regular transfers of funds between any of these entities and the reasons for the transfers; and (b) a description of any services provided by any of these entities to another of these entities.

     *Answer:*

**Interrogatory No. 2:**  Describe the relationship among and between the Corporate Defendant and David J. Devany or any entities he owns, including:  (a) an explanation of regular transfers of funds between any of these entities and the reasons for the transfers; and (b) a description of any services provided by any of these entities to another of these entities.

     *Answer:*

18

**Interrogatory No. 3:**  Identify:  (a) each client-creditor on whose behalf the Corporate

Defendant engaged in third-party debt collection; (b) the dates the Corporate Defendant provided

those services to the client-creditor; and (c) contact information for the client-creditor.

      *Answer:*

**Interrogatory No. 4:**  For each document relating to training, instructions, guidance, policies,

practices, or directions provided to Defendants' agents, representatives, and employees produced

in response to Request for Production No. 3, provide the dates each distinct version of the

document was used.  Identify any changes to the content of these documents, excluding any

minor clerical, typographical, or grammatical changes, and provide the date each change was

made.  Further, identify the individuals principally responsible for drafting each document and

making any subsequent changes to it.

      *Answer:*

**Interrogatory No. 5:**  Identify all complaints, petitions, lawsuits, or other court filings, both

civil and criminal, filed by or on behalf of Defendants, in connection with a consumer's

purported debt.  For each action filed, state:

      (a)     the nature of the action (*e.g.,* civil suit for seizure or attachment of a

                person's property, criminal prosecution);

      (b)     the case number;

      (c)     the court in which the action was filed;

      (d)     the date it was filed;

    (e)      the parties involved;

    (f)      the date and disposition of the action; and

    (g)      identify the counsel who filed the action.

*Answer:*

**Interrogatory No. 6:**  Describe each defendant's efforts to ensure, verify, or monitor whether its employees were complying with Section 5 of the FTC Act, 15 U.S.C. § 45(a), and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1601, 1692 *et seq.*, including a description of any employee warnings, disciplinary actions, or terminations and the identity of the individual or individuals who took those actions.

*Answer:*

**Interrogatory No. 7:**  Identify any investigation, inquiry, action, lawsuit, arbitration, or other proceeding, from or on behalf of any governmental agency, private consumer protection entity (*e.g.,* Better Business Bureau), or individual consumers involving the Corporate Defendant. Identify the parties and the dates the action(s) commenced and ended.  Provide a brief description of the nature of the action(s) and the final outcome.

*Answer:*

**Interrogatory No. 8:**  Identify date on which David J. Devany stopped working for CRS, and all reasons for his termination.

*Answer:*

20

**Interrogatory No. 9**:  Identify by name, last known address and telephone number all owners and/or operators and/or lessors of the building located at 671 E. 18th Street, Plano, Texas 75074 during the relevant time period.

> *Answer:*

**Interrogatory No. 10**:  Identify by name and title each person with CRS who has been responsible for:

   (a)      determining policies and procedures for compliance with the FDCPA;

   (b)      training debt collectors relating to compliance with the FDCPA;

   (c)      monitoring debt collectors for compliance with the FDCPA;

   (d)      for each person identified, indicate the responsibilities held and the dates for
   which he or she held them.

> *Answer*:

**Interrogatory No. 11**:  Identify the name, alias, last known home and work addresses, all telephone numbers, and email addresses, and a job description for every employee formerly employed by CRS whose responsibilities included the collection of debts or supervising the collection of debts.  This includes managers, collection and otherwise.  Indicate the dates of employment for each.  For each manager terminated, if any, identify the reasons the employment with CRS was terminated.

> *Answer:*

21

**Interrogatory No. 12**:  For the relevant time period, describe CRS's policies and procedures relating to the making and retention of recordings of telephone calls between CRS debt collectors and any person from whom the CRS debt collector was attempting to collect a debt.

>  *Answer*:


**Interrogatory No. 13**:  Identify the location and custodian of all audio recordings referenced in response to Interrogatory No. 12 above.

>  *Answer:*


**Interrogatory No. 14**:  If for any of the Requests for Production of Documents set forth above, there are documents that would be responsive, but they have been destroyed, mislaid, transferred, deleted, altered or over-written, describe the date and circumstances.

>  *Answer:*


**Interrogatory No. 15:**  Identify the individuals who had authority to respond to BBB complaints on behalf of CRS during the relevant time period.

>  *Answer*:


**Interrogatory No. 16:**  Describe the procedures CRS used to hire new employees, including but not limited to collectors, and identify the individuals who had responsibilities for or were involved in the CRS hiring process by name, position, and the relevant time frame the individual was so involved, and who each such individual reported to.

*Answer:*

---

**Interrogatory No. 17:**  Describe the procedures CRS used to fire employees, including but not limited to collectors, and identify the individuals who had responsibilities for or were involved in the CRS firing process by name, position, and the relevant time frame the individual was so involved, and who each such individual reported to.

*Answer:*

**Interrogatory No. 18:**  Provide all email addresses and phone numbers used by Timothy Ford in conducting CRS business during the relevant time-period.

*Answer:*

**Interrogatory No. 19:**  Identify your net worth.

*Answer:*

**Interrogatory No. 20:**  Identify all real property owned by you, in whole or in part, including the nature of your ownership, and all loans, mortgages or other financial instruments that encumber, are guaranteed by, or otherwise relate to any real property owned by you.

*Answer:*

**Interrogatory No. 21:**  Identify all non-realty assets owned by you, including without limitation, cash, stocks, stock options, mutual funds, ETFs, futures contracts, checking accounts, savings

accounts, certificates of deposit, money market accounts, savings bonds, treasury bills, treasury

notes, registered and bearer bonds, state and municipal bonds, life insurance policies, deferred

annuities, and other financial instruments, whether held as cash, in a safe, a safe deposit box, an a

trading account, a pensions plan, a profit-sharing plans, a 401(k) plan, an IRA, a Keogh or other

retirement account, a college savings plan, a financial institution, or otherwise.  The term "cash"

includes currency and uncashed checks.

    *Answer:*


**Interrogatory No. 22:**  Identify all previously unidentified and outstanding debts and financial

obligations you have in excess of $2,500, including without limitation any previously

unidentified debt, loan, mortgage, contract obligation, contractual guarantee, judgment,

settlement obligation, or other financial obligation.

    *Answer:*


**Interrogatory No. 23:**  Identify all outside accountants retained by you from 2010 until the

present.

    *Answer:*

**Interrogatory No. 24:**  Identify all persons, other than attorneys, who contributed information in

preparing the answers to these Interrogatories.

    *Answer:*

## V.      REQUESTS FOR ADMISSION

In accordance with Rule 36 of the Federal Rules of Civil Procedure, Plaintiff requests that Defendant admit the following:

1.     During the relevant time period, CRS was a third-party debt collector.

2.     During the relevant time period, CRS was a small, closely-held corporation.

3.     During the relevant time period, CRS conducted its business in numerous states.

4.     During the relevant time period, Timothy Ford was the majority owner and a Director of CRS.

5.     Timothy Ford remains President of CRS to this day.

6.     During his tenure as CRS's President, Ford had authority to control the practices of CRS's Plano office.

7.     During his tenure as CRS's President, Ford had authority to control the practices of CRS's Dallas office.

8.     During his tenure as CRS's President, Ford spoke daily with management of CRS's Dallas office.

9.     During his tenure as CRS's President, Ford spoke daily with management of CRS's Plano office.

10.    During his tenure as CRS's President, Ford was apprised of CRS's response to litigation of private FDCPA lawsuits brought against CRS.

11.    During his tenure as CRS's President, Ford participated in CRS's response to litigation of private FDCPA lawsuits brought against CRS.

12.     During his tenure as CRS's President, Ford approved CRS's settlements in response to litigation of private FDCPA lawsuits brought against CRS.

13.     During his tenure as CRS's President, Ford participated in CRS's response to governmental inquiries brought against CRS.

14.     During his tenure as CRS's President, Ford approved CRS's settlements in response to governmental inquiries brought against CRS.

15.  .  In approximately late 2013 until the company closed its doors, Ford was present in the CRS office on a daily basis.

16.     Devany was CRS's Vice President of Operations in excess of 10 years.

17.     Devany was CRS's Vice President of Operations until he became a collections manager for CRS in late 2013.

18.     During his tenure as CRS's Vice President of Operations, Devany was responsible for CRS's Dallas office.

19.     During his tenure as CRS's Vice President of Operations, Devany was present in the CRS Dallas office daily.

20.     During his tenure as CRS's Vice President of Operations, Devany reported to Timothy Ford daily.

21.     During his tenure as CRS's Vice President of Operations, Devany oversaw CRS's response to litigation of private FDCPA lawsuits brought against CRS.

22.     During his tenure as CRS's Vice President of Operations, Devany participated in CRS's response to litigation of private FDCPA lawsuits brought against CRS.

23.     During his tenure as CRS's Vice President of Operations, Devany was responsible

26

for the collection efforts in CRS's Dallas office.

24.    During his tenure as CRS's Vice President of Operations, collection managers reported to Devany.

25.    During his tenure as CRS's Vice President of Operations, CRS's FDCPA compliance officer reported to Devany.

26.    During the relevant time period, CRS employees falsely represented the character or legal status of consumers' debt.

27.    During the relevant time period, CRS employees falsely represented or implied that Defendants' collectors were attorneys, or that communication was on behalf of an attorney.

28.    During the relevant time period, CRS employees falsely represented or implied that Defendants' collectors were employed by, calling from, or calling on behalf of, a court or judge.

29.    During the relevant time period, CRS employees falsely represented or implied that Defendants' collectors were employed by, calling from, or calling on behalf of a police department.

30.    During the relevant time period, CRS employees falsely represented or implied that Defendants' collectors were employed by, calling from, or calling on behalf of any local governmental authority.

31.    During the relevant time period, CRS employees falsely represented or implied that nonpayment of a debt would result in the filing of a lawsuit or other legal action against consumers.

32.   During the relevant time period, CRS employees falsely represented or implied that nonpayment of a debt would result in the seizure, garnishment, or attachment of a person's property or wages.

33.   During the relevant time-period, CRS did not file any lawsuits against consumers for collection of debts.

34.   During the relevant time-period, CRS did not file any garnishment proceedings against consumers for collection of debts.

35.   During the relevant time-period, CRS did not file any proceedings for seizure of assets against consumers for collection of debts.

36.   During the relevant time-period, CRS did not seek to collect debts that were the subject of a pending lawsuit.

37.   As the Director and President of CRS, Timothy Ford had the authority to control the debt collection practices of his employees.

38.   As the Director and President of CRS, Timothy Ford had the authority to hire and fire employees.

39.   As the Director and President of CRS, Timothy Ford was aware of complaints filed with the Better Business Bureau and the Federal Trade Commission regarding CRS collectors.

40.   As the Director and President of CRS, Timothy Ford was aware of private lawsuits filed in federal courts against CRS, pursuant to the FDCPA.

41.   As the Vice President of CRS, David Devany had the authority to control the debt collection practices of his employees.

28

42. As the Vice President of CRS, David Devany had the authority to hire and fire employees.

43. As the Vice President of CRS, David Devany was aware of complaints filed with the Better Business Bureau and the Federal Trade Commission regarding CRS collectors.

44. As the Vice President of CRS, David Devany was aware of private lawsuits filed in federal courts against CRS, pursuant to the FDCPA.

45. In response to a Civil Investigative Demand issued by FTC, Defendants produced documents in Bates ranges CRS000001-1674, CRSE-000001 (employee list), CRS-E000002 (consumer file index 1), CRS-#000003 (consumer file index 2), CRSE-000004 (hard drive with audio files), and PCID-000023-24, 40-44, and 53-59. David J. Devany certified, pursuant to 28 U.S.C. § 1746, that the records are records of regularly kept business activity, and Devany had the authority and the knowledge to so certify.

DATED: October 15, 2015                Respectfully submitted,

**OF COUNSEL:**                        **FOR THE UNITED STATES OF AMERICA:**

JONATHAN E. NEUCHTERLEIN              BENJAMIN C. MIZER
General Counsel                       Principal Assistant Attorney General
                                      Civil Division
DAMA J. BROWN                         United States Department of Justice
Regional Director
Southwest Region                      MICHAEL S. BLUME
                                      Director
ANNE D. LEJEUNE                       Consumer Protection Branch
Texas Bar No. 24054286
                                      RICHARD GOLDBERG
REID A. TEPFER                        Assistant Director
Texas Bar No. 03932300               Consumer Protection Branch

Attorneys, Southwest Region           /s/ Heide L. Herrmann
                                      HEIDE L. HERRMANN
Federal Trade Commission              Lead Attorney
1999 Bryan Street, Suite 2150         Ohio Bar No. 0069640
Dallas, Texas 75201                   Consumer Protection Branch
(214) 979-9371; alejeune@ftc.gov      United States Department of Justice
(214) 979-9395; rtepfer@ftc.gov       Post Office Box 386
(214) 953-3079; (fax)                 Washington, D.C.  20044
                                      (202) 532-4882 (telephone)
                                      (202) 514-8742 (facsimile)
                                      Heide.Herrmann@usdoj.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 16th day of October, 2015, I served a true and

correct copy of the foregoing instrument to counsel for all parties at the following address:


Stephen Gray McFayden
Franklin McFayden
15128 Appaloosa Drive
Frisco, Texas 75035
Attorney for Defendants Commercial Recovery Systems, Inc., and Timothy L Ford


Emil Lippe, Jr.
Plaza of the Americas, South Tower
600 N. Pearl Street, Suite S2460
Dallas, Texas 75201
emil@texaslaw.com
Attorney for Defendant David J. Devany