# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | Civil Action No. 4:15-CV-00036 |
| | § | Judge Mazzant |
| COMMERCIAL RECOVERY SYSTEMS, INC., TIMOTHY L FORD, INDIVIDUALLY AND AS AN OFFICER OF COMMERCIAL RECOVERY SYSTEMS, INC.; AND DAVID J DEVANY, INDIVIDUALLY AND AS A FORMER OFFICER OF COMMERCIAL RECOVERY SYSTEMS, INC.; | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff United States of America's Memorandum in Support of Civil Penalties against Defendant Timothy Ford ("Plaintiff's Memo") (Dkt. #103). The Court, having considered Plaintiff's Memo, finds Defendant Timothy Ford owes Plaintiff $2,000,000 as a reasonable and appropriate civil penalty for his violations of the Fair Debt Collection Practices Act.

## BACKGROUND

This case commenced in January 2015, and the Complaint named as defendants Commercial Recovery Systems, Inc. ("CRS"), its President, Timothy Ford, and its former Vice President, David Devany. The Complaint alleges that defendants violated Sections 807(2)-(5) of the Fair Debt Collection Practices Act ("FDCPA") and Section 5 of the Federal Trade Commission Act ("FTC Act") by impersonating attorneys, attorneys' staff and judicial employees; falsely threatening litigation; falsely threatening wage garnishment and asset seizure; and misrepresenting

the character or legal status of a debt. The Complaint seeks civil penalties and a permanent injunction to halt CRS, Ford, and Devany's unlawful practices.

On April 7, 2016, the Court granted the government's motion for summary judgment against Defendants CRS and Ford (Dkt. #69). In its April 7, 2016 Opinion and Order, the Court described CRS:

> Defendant CRS is a Texas corporation that has been in business since 1994. Until 2013, its main office was in Dallas, with a secondary office in Plano, Texas. CRS is a third-party debt collector that primarily collects consumer debt that was 'primarily for personal, family, or household purposes,' including auto loans and credit card debts, on behalf of the original creditors, and conducts business in numerous states. In November 2013, CRS sought bankruptcy protection under Chapter 11. Defendant Tim Ford, CRS's President, Director, and majority shareholder, testified in CRS's bankruptcy proceedings that the company's insolvency resulted, in large part, from a number of Fair Debt Collection Practices Act ('FDCPA') lawsuits brought by private litigants.
>
> As a third-party collector, CRS did not own the debts it collected. The company was not a law firm and did not sue debtors or garnish wages. CRS was a mid-size debt collection company. Shortly before declaring bankruptcy, the company employed approximately 300 employees, but downsized in 2013 to employing approximately 80 collectors

*Id.* at 1–2. Based on these findings, the Court held Defendants Ford and CRS liable for injunctive relief, and issued a permanent injunction against both defendants. The Court also held Ford liable for civil penalties, reasoning:

> The summary judgment record establishes that Ford was the sole owner and President of CRS up until November 2013. He received daily updates on the company and represented the company in negotiations with government investigations. Ford himself removed David Devany from his role as Vice President. Thus, Ford had the authority to control the company's collection practices. Therefore, Ford is liable for civil penalties for FDCPA violations by CRS.

*Id.* at 14–15.

On July 11, 2016, the Court entered an order setting a briefing schedule to determine civil penalties. The Court ordered Plaintiff to submit its brief by August 9, 2016, and Ford to submit his

response on September 9, 2016. On August 8, 2016, Plaintiff filed its Memorandum in Support of Civil Penalties against Defendant Timothy Ford (Dkt. #103). Ford did not file a response.

## ANALYSIS

The Court determined in its April 7, 2016 Opinion and Order that Defendant Ford is liable for civil penalties under the FDCPA and FTC Act (Dkt. #69 at 14–15). Ford had actual knowledge that his collectors were not complying with the FDCPA. The issue before the Court is to determine the proper penalty for Ford's violation of the FDCPA and FTC.

Section 5(m) (1) (A) of the FTC Act authorizes a civil penalty of up to $40,000 for each instance of conduct that violates the FDCPA with actual or implied knowledge of the FDCPA. A separate violation of the FDCPA occurs each time a prohibited threat or representation is made to a consumer in a collection contact. *United States v. ACB Sales & Service, Inc.*, 683 F. Supp. 734, 741 (D. Ariz. 1987) (FDCPA enforcement action); *United States v. Central Adjustment Bureau, Inc.*, 667 F. Supp. 370, 385 n.29 (N.D. Tex. 1986) (each use of an improper dunning letter is a separate and distinct violation). In determining the appropriate civil penalty, the Court must take into account the factors listed at 15 U.S.C. § 45(m)(1)(C), which include the degree of culpability, history of prior such conduct, ability to pay, effect on ability to continue to do business, and such other matters as justice may require. The "other matters" many courts consider include injury to the public and the benefits derived from the violations. *See, e.g.*, *United States v. Nat'l Fin. Servs.*, 98 F.3d 131, 140 (4th Cir. 1996) (considering the good or bad faith of defendant; the injury to the public; the desire to eliminate benefits derived from the violation; and the necessity of vindicating the authority of the FTC and deterring further violations by the defendant or others).

Plaintiff's Memo estimates the number of FDCPA violations committed by Defendant. Plaintiff reached this estimation by sampling Defendant's hard drive containing audio recordings

of thousands of calls made by CRS collectors between November 1, 2012, and March 21, 2013. Of the 647,750 calls produced, 147,973 were longer than one minute. Plaintiff listened to a random sample of 300 recordings. Of this sample, 50 included CRS collectors falsely representing the character or legal status of a debt, in violation of FDCPA Section 807(2); 77 included CRS collectors impersonating attorneys, attorneys' staff, or judicial employees, in violation of FDCPA Section 807(3); 21 included CRS collectors threatening garnishment, seizure, or attachment, in violation of FDCPA Section 807(4); and 68 included CRS collectors expressly or impliedly threatening litigation, in violation of FDCPA Section 807(5). From this sample, Plaintiff calculated incident rates of 16.7%, 25.7%, 7.0%, and 22.7% of Sections 807(2), 807(3), 807(4), and 807(5), respectively. Applying these rates to the phone calls greater than sixty seconds over the November 1, 2012 and March 21, 2013 sample period implies a total of 109,643 violations. The Court finds this estimation both accurate and conservative. The audio recording sample spanned six months, whereas the consumer complaint trends continued for four years. If the Court were to base its assessment of civil penalties on the actual 216 violations contained in the mere 300-call sample, the calculation would yield a maximum theoretical penalty of $8,640,000. The maximum theoretical penalty for the estimated 109,634 violations exceeds $4 billion ($40,000 x 109,643). Plaintiff requests a civil penalty of $2 million.

Plaintiff has evidenced Defendant's lack of good faith. Defendant admitted CRS had no formal FDCPA training program. Defendant admitted to hiring abusive collection managers and refused to fire them if they were effective. Defendant was aware of consumer complaints starting in 2011 and the FTC's investigation into CRS's collection practices in March 2013. Finally, Defendant had the ultimate authority over the collection managers and the collectors. The Court finds Defendant fully culpable for the FDCPA violations. *See F.T.C. v. Hughes*, 710 F. Supp. 1524,

1530 (N.D. Tex. 1989) (finding "complete" culpability where the defendant "had actual knowledge of Rule violations, [was] responsible for the day-to-day decisions . . . and ha[d] directed and controlled his employees' activities.").

The Court must consider Defendant's ability to pay in assessing civil penalties. By Defendant's own admission, he was taking home well over $2 million per year. Plaintiff contends Defendant has not cooperated in discovery and has failed to provide any financial documentation to evidence his net worth. In a deposition, Defendant claimed he was recently a multimillionaire but now claims to have nothing. When questioned as to where the substantial salary funds went, he testified that his current wife spends his money. But in early 2016, Defendant told his ex-wife that he must "look poor." Without accurate financial statements, the Court cannot assess whether Defendant has the ability to pay the requested $2 million. However, a defendant's "'ability to pay' is not a determinative factor in assessing a § 45(m)(1)(A) civil penalty." *United States v. Cornerstone Wealth Corp., Inc.*, 549 F. Supp. 2d 811, 823–24 (N.D. Tex. 2008). Rather, it is merely one factor to be considered by the Court. The Court finds a civil penalty of less than one year's salary is reasonable. Another factor, the penalty's effect on Defendant's ability to continue to do business, is not an issue because Defendant and CRS has been ordered to cease all debt collection activity. Finally, the Court finds a substantial civil penalty is appropriate and commensurate with the volume, persistence, and breadth of violations to deter future egregious behavior. The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The amount of a civil penalty should reflect the seriousness of the violation, must punish the offender, and most importantly,

must provide a deterrent to future violations by the offender and others. *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 232 (1975). Based on the foregoing, the Court finds Plaintiff's request for $2 million in damages is reasonable and appropriate and meets the goals of the FDCPA.

## CONCLUSION

Defendant Ford has violated the FDCPA and is fully culpable for such violations. Plaintiff has presented substantial evidence in support of its request for civil penalties. Defendant Ford did not respond, but the Court finds Defendant's conduct commensurate with the Plaintiff's request for damages. The Court finds Defendant Ford owes Plaintiff $2,000,000 as a reasonable and appropriate civil penalty for his violations of the FDCPA.

Within fourteen days of this date, counsel for Plaintiff will submit a proposed form of judgment consistent with this memorandum order.

**IT IS SO ORDERED.**
**SIGNED this 21st day of March, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE